## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFF R. ASH,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-020
Barrett, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 9) and the Commissioner's

Memorandum in Opposition. (Doc. 14).

### PROCEDURAL BACKGROUND

Plaintiff, Jeff R. Ash, was born in 1972 and was 34 years old at the time of the

administrative law judge's (ALJ) decision. Plaintiff has a high school education and past

relevant work experience as an auto mechanic, construction laborer, delivery driver, and salvage

laborer.

Plaintiff filed an application for DIB on February 15, 2007, and an application for SSI on

March 21, 2007, alleging disability since September 15, 2006, due to seizures, arthritis in his

knees and ankles, depression and migraines. (Tr. 155). Plaintiff's applications were denied

initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before

an ALJ. On March 5, 2009, plaintiff, who was represented by counsel, appeared and testified at a

video hearing before ALJ Robert S. Habermann. (Tr. 26-46). A vocational expert (VE), John Newman, also appeared and testified at the hearing. (Tr. 46-51).

On May 9, 2009, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from severe impairments of convulsive seizure disorder; degenerative disc disease of the lumbar spine; generalized pain in his legs, feet, and wrists; chronic recurrent headaches; and a mood disorder, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 11, 12). According to the ALJ, plaintiff has the residual functional capacity to: lift and/or carry 50 pounds occasionally and 20 pounds frequently; sit for 6 hours out of an 8 hour workday; stand for 3 hours in an 8 hour workday; walk for 2 hours out of an 8 hour workday; and frequently climb ramps and stairs. (Tr. 13). He can continuously reach, handle, finger, feel, and push/pull with both upper extremities and continuously operate foot controls with both feet. *Id.* The ALJ found further that plaintiff can only occasionally stoop, kneel, crouch, crawl, and work around hazardous machinery and cannot climb ladders/ropes/scaffolds, balance, or work at unprotected heights. *Id.* As to plaintiff's mental limitations, he would have a moderate reduction in concentration, persistence, and pace which means he would have periods of time that would last up to 10 seconds during an hour where he would be off task, but he could return to work to complete a full day. *Id.* The ALJ next determined that plaintiff's acquired job skills do not transfer to other occupations within the residual functional capacity defined above. (Tr. 20). The ALJ further determined that plaintiff is capable of performing a significant number of jobs in the national economy including jobs as a cashier, assembler and packer. *Id.* Accordingly, the ALJ concluded that plaintiff is not disabled under the Act. (Tr. 21).

2

Plaintiff's request for review by the Appeals Council was denied (Tr. 1-5), making the decision of the ALJ the final administrative decision of the Commissioner.

## MEDICAL RECORD

### Amir Malhorta, M.D.

Following a loss of consciousness and seizure activity, plaintiff saw Dr. Malhorta on December 6, 1999. Dr. Malhorta diagnosed likely seizures with complex partial aura. (Tr. 262).

### Jitendra Patel, M.D.

Thereafter, plaintiff was followed by Dr. Jitendra Patel from January 2000 through October 2001 for possible seizures versus syncope episodes. (Tr. 254-260). Plaintiff reportedly had one episode in March of 2000, but his EEG was normal. (Tr. 259). He also complained of back pain in the lower back which was getting worse. He reported a history of low back pain for quite some time. (Tr. 258). Dr. Patel saw plaintiff on October 11, 2001 for his depression. Dr. Patel diagnosed depression with possible anxiety state. (Tr. 254).

### Charles W. Noble, II, M.D.

Plaintiff presented for a cardiac evaluation with Dr. Noble for his history of syncope on May 16, 2000. Dr. Noble reported that plaintiff had two syncopal episodes, in December and in March. There was tonoclonic movement noted. His neurological workup, which included an electroencephalogram, was normal. Plaintiff denied any chest discomfort, shortness of breath, or paroxysmal nocturnal dyspnea. He denied palpitations. Dr. Noble performed an echocardiogram which revealed normal systolic function. Dr. Noble scheduled plaintiff for a head-up tilt table test. (Tr. 256-57). On July 11, 2000, Dr. Noble performed a tilt table test in the cardiovascular lab. Dr. Noble felt the study showed a borderline neurocardiogenic syncope and his symptoms

3

were possibly related to a vasodepressor disorder. Dr. Noble prescribed medication for plaintiff. (Tr. 252).

### Steven Merkel, M.D.

Plaintiff was treated at the Chesapeake Family Medical Center from September 2006 through October 2007 for anxiety, back pain, and a seizure disorder. On September 19, 2006, plaintiff was seen by Dr. Merkel of the Chesapeake Medical Center for chronic lower extremity pain and anxiety. At his initial visit, plaintiff requested refills of his medication for knee pain and Xanax for chronic anxiety and depression. He reported that Xanax stabilizes his mood. Examination revealed that plaintiff had good range of motion in both knees with some mild joint line tenderness both medially and laterally with mild crepitus and hyper mobility of the patella bilaterally. There was also no indication of instability. Plaintiff had 5/5 motor strength throughout and his senses were intact. He had normal muscle strength and tone, normal gait and station, and normal range of motion in his left lower extremity. Dr. Merkel advised plaintiff not to drive and to avoid ladders and swimming because of his history of seizures and syncope. He changed plaintiff's medication to try to control his pain without narcotics. (Tr. 474-77).

Plaintiff had medications filled in October through December 2006 at the Chesapeake Medical Center. (Tr. 473-74).

When he was next seen in August 2007, plaintiff complained of leg and foot pain. (Tr. 470-71). He was treated with medications. (Tr. 471). In September 2007, plaintiff was treated for left leg pain following a fall, colitis, and abdominal pain. (Tr. 465-68). He was treated with medications. *Id*.

4

On October 3, 2007, Dr. Merkel completed interrogatories for the Ohio Bureau of Disability Determination. He reported that plaintiff was treated for back pain and anxiety. (Tr. 461). He also reported that plaintiff suffered from "no obvious impairments" in his ability to perform sustained work activity, such as sitting, standing, walking, and lifting. (Tr. 462). Dr. Merkel opined he did not feel plaintiff was disabled. (Tr. 461).

Rahul Patil, M.D.

Plaintiff treated with Dr. Rahul Patil for back pain from September 2006 through March 2007. (Tr. 319-25). On October 19, 2006, physical examination revealed tenderness over plaintiff's lower back, cervical spine, his right elbow, and right ankle. Dr. Patil noted plaintiff's back pain extended down his right leg. (Tr. 323). Dr. Patil diagnosed plaintiff with back pain, right elbow pain, depression, and an anxiety disorder. (Tr. 321-23). He placed plaintiff on anti-anxiety, anti-depressant, and prescription pain medications. On January 19, 2007, Dr. Patil counseled plaintiff for anxiety disorder and prescribed Xanax. (Tr. 320). Dr. Patil documented an allergic reaction to Vicodin on January 25, 2007, and changed plaintiff's pain medication to Darvocet. (Tr. 319).

Pramit Bhasin, M.D.

On October 2, 2006, Dr. Bhasin, a neurologist, reported that plaintiff was being seen following a work-related accident where his truck tipped over on its side. Since the accident, plaintiff had suffered recurring headaches. Dr. Bhasin diagnosed post-traumatic headaches and possible post-traumatic vestibulopathy. Dr. Bhasin advised him not to drive, operate heavy equipment, swim or be at heights for at least ninety days. Dr. Bhasin placed plaintiff on Topamax because it would provide some good anti-convulsant side effects. Plaintiff was also

5

instructed to avoid excessive use of caffeine. (Tr. 268-70). An MRI of the brain ordered by Dr. Bhasin was normal. (Tr. 263).

On January 16, 2007, plaintiff reported that he had not had any recurrence of his seizures and that his headaches and dizziness were better. Dr. Bhasin reported that plaintiff's examination was essentially normal. (Tr. 264).

King's Daughters Medical Center

The record contains numerous treatment notes from King's Daughters Medical Center. On September 15, 2006, plaintiff was seen following a work-related accident. The record shows that plaintiff suffered a seizure in the waiting room while waiting for a drug toxicology result. The episode lasted about five minutes. Examination showed full range of motion in his joints and normal neurological findings. (Tr. 309-10). A CT scan of the head was negative and revealed no abnormalities. (Tr. 314, 315). Plaintiff was seen for chest pains on September 20, 2006. (Tr. 303-08). On November 1, 2006, plaintiff sought treatment for right elbow and right forearm pain. (Tr. 295-301). X-ray findings were normal. (Tr. 296). Plaintiff was seen for a migraine on December 16, 2006. (Tr. 291-94). On February 1, 2007, plaintiff was seen for seizure disorder. It was noted that he had two seizure episodes on that day. (Tr. 280-90). On March 15, 2007, the records showed questionable seizure activity. (Tr. 274-79). On April 28, 2007, plaintiff presented with a headache. (Tr. 272). On June 23, 2007, plaintiff was admitted to the Behavioral Unit after an apparent overdose of his anti-depressant Xanax mixed with alcohol. Plaintiff was diagnosed with major depression and alcohol dependence in partial remission. (Tr. 365-406). On January 20, 2008, plaintiff sought treatment for right side pain. (Tr. 524-45). A CT of his abdomen found two pulmonary nodules in the lung base. (Tr. 533). On February 5,

6

2008, plaintiff was treated for a suicide attempt by overdosing on his mother's Ativan mixed with alcohol. He was admitted to the ICU. (Tr. 481-523).

### Tarvinder S. Matharu, M.D.

Dr. Matharu reported on April 17, 2007, that it was unsafe for plaintiff to work due to his seizure disorder. (Tr. 326).

### Our Lady of Bellefonte Hospital

On May 4, 2007, plaintiff presented with abdominal pain and was admitted for acute pancreatitis from alcohol. (Tr. 330-57). On September 18, 2007, plaintiff was seen for pancreatitis, knee swelling, and abdominal pain. (Tr. 434-49). A CT scan of the head was unremarkable. A CT scan of the abdomen revealed nonspecific small bowel distention compatible with eleitis or enteritis. Bilateral knee x-rays were unremarkable. (Tr. 449).

### Richard Sexton, Ph.D.

Dr. Sexton, a consulting psychologist, examined plaintiff on June 16, 2007. Plaintiff's chief complaints were "physical and emotional." Plaintiff reported heavy alcohol use, but stopped one month prior to the evaluation. Plaintiff reported that he was capable of washing, dressing, and attending to his own personal hygiene along with doing some cooking, cleaning, laundry, and grocery shopping. In a typical day he reportedly awoke, walked around, did chores, and watched television. His hobbies included making model cars and drawing flowers. Plaintiff indicated that he had many friends, but does not socialize very often. Mental status examination showed that plaintiff's mood and affect were flat, his thinking was depressive and anxious in nature, he was well-oriented to day/date and present circumstances, and his immediate memory was fair. Dr. Sexton reported that plaintiff's judgment appeared to be relatively good, but his

7

intelligence was at the low end of the low-average range. Dr. Sexton diagnosed plaintiff with a mood disorder not otherwise specified, but indicated that the impairment was managed with anti-depressant and anti-anxiety medication. Dr. Sexton assigned plaintiff a Global Assessment Functioning ("GAF")[1] score between 55 and 59. According to Dr. Sexton, plaintiff was able to understand, recall, and carry out simple instructions; his ability to interact with other people (including co-workers and supervisors) was mildly impaired; and his ability to tolerate daily stresses was mildly impaired. (Tr. 358-64).

### Kevin Edwards, Ph.D.

In July 2007, state agency reviewing psychologist, Dr. Edwards, reported that plaintiff would be moderately limited in his ability to: maintain attention and concentration for extended periods; perform activities within a schedule; complete a normal workday/work week without interruption; and respond to changes in the workplace setting. (Tr. 407-408). According to Dr. Edwards, plaintiff had the capacity to: understand, remember, and follow 3- to 4- step instructions; persist at tasks to complete them; interact with others; and adapt to daily work stress. (Tr. 409). Dr. Edwards assessment was affirmed by Joan Williams, Ph.D., on November 13, 2007. (Tr. 478).

### Dimitri Teague, M.D.

On August 8, 2007, Dr. Teague, a state agency reviewing physician, opined that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently. Dr. Teague reported

---

[1]GAF is used to report the clinician's judgment of the individual's overall level of functioning. GAF is divided into functioning ranges and scored on a scale of 0 (an individual is found to be a danger) to 100 (an individual is found to have superior functioning in a wide range of activities). *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM- IV-TR). A GAF score of 55 to 59 refers to an individual with "moderate" symptoms. *Id.*

8

plaintiff should never climb ladders, ropes or scaffolds and should avoid hazards, such as machinery and heights. (Tr. 425-32). Dr. Teague's assessment was affirmed by Myung Cho, M.D., on November 14, 2007. (Tr. 479).

> Stephen Nutter, M.D.

On December 16, 2008, plaintiff was examined by Dr. Nutter, a consultative occupation medicine specialist. Upon examination, Dr. Nutter noted that plaintiff ambulated with a normal gait, was stable at station, and comfortable in both the supine and sitting positions. There was no tenderness or swelling in his upper extremities. Plaintiff had 5/5 grip strength bilaterally, no tenderness or swelling in the lower extremities, no pain with range of motion testing in the cervical spine, and no tenderness or spasms in the paravertebral spine. However, there was pain with range of motion testing in the lumbar spine and tenderness to palpation of the paraspinal muscles of the lumbar spine from L3-L5, but there was no evidence of muscle spasm. The straight leg test was normal in the sitting and supine positions. Plaintiff could stand on one leg without difficulty and had no hip joint tenderness. Plaintiff's neurological examination revealed normal deep tendon reflexes; he walked on his heels and toes; he performed the tandem gait without difficulty; and he was able to squat without difficulty. Dr. Nutter diagnosed seizure disorder and dizziness, arthralgia, chronic lumbar strain, and shortness of breath of undetermined cause. According to Dr. Nutter, plaintiff could lift and/or carry 50 pounds occasionally and 20 pounds frequently; sit for 6 hours in an 8 hour workday; stand for 3 hours in an 8 hour workday; walk for 2 hours in an 8 hour workday; and frequently climb ramps and stairs. Plaintiff could continuously reach, handle, finger, feel, and push/pull with both upper extremities and continuously operate foot controls with both feet. Plaintiff could only occasionally stoop, kneel,

9

crouch, crawl, and work around hazardous machinery and could not climb ladders/ropes/ scaffolds, balance, or work at unprotected heights. (Tr. 546-60).

### H.C. Alexander, III, M.D.

Following the conclusion of the administrative hearing, the ALJ sought the opinion of an impartial medical expert. On April 23, 2009, following his review of the entire record, Dr. Alexander opined that based on plaintiff's physical impairments, he would be limited to lifting and/or carrying up to 50 pounds occasionally and 20 pounds frequently; sitting for 2 hours without interruption and for 6 hours total in an 8 hour workday; and standing/walking for 2 hours without interruption and for 6 hours total in an 8 hour workday with several non-exertional limitations. (Tr. 593-601).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearing that he had an accident in a coal truck on September 15, 2006. (Tr. 31). He also testified that he underwent lung surgery on the right about four years prior to hearing. *Id.* He testified that he was in King's Daughters Behavioral Unit about a year and a half before the hearing due to a suicide attempt. (Tr. 32).

Plaintiff testified that his back pain radiates into his legs, but mostly into his left leg. (Tr. 38). He suffers from daily, dull, aching pain which is not constant and is exacerbated by prolonged sitting and cold, wet weather. *Id.* However, he stated that he is not currently taking any prescription medication for pain due to his fear of becoming addicted. (Tr. 44). He uses heat pads at night on his back. (Tr. 40).

He also testified to migraine headaches which occur once or twice a week and last from one-half to two hours. (Tr. 41). He has seizures which occur sporadically. (Tr. 42). He cannot

10

move or talk when he has a seizure. *Id.* He has minor seizures about once or twice a week, where he is unable to respond for a short period of time. (Tr. 45). Plaintiff also testified that he suffers from carpal tunnel syndrome in both wrists, but that he does not have trouble holding things with his hands. (Tr. 41).

Plaintiff testified that he used to have a lot of problems with depression, but now he has about 3 or 4 good days per week, but also has bad days where he is so irritated he cannot even stand to be around himself. (Tr. 43).

As to his daily activities, plaintiff testified that he tries to do most of the housework, but if he gets hot, he gets shaky and takes a break. (Tr. 29). He also takes care of yard work. *Id.* He has no problems with self care. *Id.* His girlfriend does the grocery shopping and cooking. *Id.* On average, he takes 2 hour naps during the day. (Tr. 30).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

11

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for supplemental security income benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a

12

severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by

13

showing an inability to perform the relevant previous employment, the burden shifts to the

Commissioner to show that plaintiff can perform other substantial gainful employment and that

such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980).  To rebut a prima

facie case, the Commissioner must come forward with particularized proof of plaintiff's

individual capacity to perform alternate work considering plaintiff's age, education, and

background, as well as the job requirements.  *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321,

323 (6th Cir. 1978).  *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d

962, 964 (6th Cir. 1984)(per curiam).  Alternatively, in certain instances the Commissioner is

entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie

case of disability.  20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323.  *See also Cole

v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

     An impairment can be considered as not severe only if the impairment is a "slight

abnormality" which has such a minimal effect on the individual that it would not be expected to

interfere with the individual's ability to work, irrespective of age, education, and work

experience.  *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir.

1985)(citation omitted);  *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

     Plaintiff has the burden of establishing disability by a preponderance of the evidence.

*Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v.

*Richardson,* 438 F.2d 1181 (6th Cir. 1971).  Once plaintiff establishes a prima facie case by

showing an inability to perform the relevant previous employment, the burden shifts to the

Commissioner to show that plaintiff can perform other substantial gainful employment and that

14

such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. §416.927(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009); *Wilson*, 378 F.3d at 544. In this regard, the administrative law judge is

15

required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §416.927(d)(2),(4).

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk* v. *Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan* v. *Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky* v. *Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones* v. *Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'"*Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective

16

medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King* v. *Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

## OPINION

Plaintiff assigns three errors in this case. First, plaintiff contends the ALJ erred by improperly dismissing the opinion of treating physician, Dr. Matharu. Second, plaintiff argues

17

the ALJ failed to properly consider the combined impact of his impairments.  Third, plaintiff

contends that the ALJ failed to find his allegations of disabling back pain were entirely credible.

## I.  The ALJ properly discounted Dr. Matharu's opinion of disability.

Plaintiff argues the ALJ erred by improperly dismissing the findings of a treating source,

Dr. Matharu. (Doc. 9 at 10).  Dr. Matharu opined that "[i]t is unsafe for Mr. Ash [] to work due

to seizure disorder." (Tr. 326).  Plaintiff contends the ALJ "completely dismissed" this opinion

and that plaintiff's personal seizure record shows he continued to have seizure activity at least

three to four times per month. (Doc. 245-248).  The vocational expert testified that there are no

jobs available for an individual who has seizures once per month. (Tr. 50-51).

Contrary to plaintiff's contention, the ALJ did not "dismiss" Dr. Matharu's opinion, but

explained his reasons for not crediting the physician's opinion:

> [S]tatements that a claimant is "disabled," "unable to work," or cannot perform a
> past job are not medical opinions, but are administrative findings dispositive of a
> case, requiring familiarity with the Regulations and legal standards set forth
> therein.  Such issues are reserved to the Commissioner, who cannot abdicate his
> statutory responsibility to determine the ultimate issue of disability.  As a result, I
> have carefully considered Dr. Matharu's opinion but find that it is not supported
> by the record as a whole and is contradicted by the other persuasive evidence
> contained herein, therefore his opinion is given little weight.

(Tr. 17).

The ALJ's decision in this regard is supported by substantial evidence.  First, it is not

clear that Dr. Matharu is a treating source, despite plaintiff's representations to the contrary.  "A

physician qualifies as a treating source if the claimant sees [him] 'with a frequency consistent

with accepted medical practice for the type of treatment and/or evaluation required for [the]

18

medical condition.' 20 C.F.R. § 404.1502. A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.' *Id*." *Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Plaintiff has not pointed to any medical records showing how frequently Dr. Matharu examined plaintiff or the conditions for which he treated plaintiff. Aside from the single, handwritten sentence on a prescription pad (Tr. 326), the only other record of examination by Dr. Matharu is a hospital discharge summary dated May 9, 2007 indicating plaintiff was seen and treated for abdominal pain. (Tr. 330). Without more, Dr. Matharu cannot be considered a treating physician whose opinion is entitled to special weight.

In any event, Dr. Matharu's opinion that plaintiff is "unable to work" is unaccompanied by any clinical or objective medical findings showing Dr. Matharu's rationale for his opinion. While plaintiff cites to his own handwritten notes recording purported seizure activity from December 2008 through March 2009, the record as a whole does not support a finding that his seizure disorder is disabling. As the ALJ reasonably noted, plaintiff complained of seizure activity to his medical providers from September 2006, following his work accident, through March 2007, but not thereafter. (Tr. 18). This finding is substantially supported by the record, including the medical advisor's opinion which was based on the record as a whole following the ALJ's hearing. (Tr. 593, noting no seizure encounters or report of seizures from March 2007 through the present). In addition, as the ALJ accurately noted, the only other indication of a seizure impairment is from Dr. Durado, whose records in January 2009 show that plaintiff reported he had not had a seizure for about one year prior to that visit. (Tr. 590). Plaintiff has not directed the Court to any other records showing that his seizure disorder occurs with such a

19

frequency as to impose limitations in addition to those found by the ALJ. Therefore, the Court determines that plaintiff's first assignment of error is not well-taken and should be overruled.

## II. The ALJ properly considered the combined effect of plaintiff's impairments.

Next, plaintiff argues the ALJ failed to consider the combined impact of plaintiff's impairments in determining plaintiff's residual functional capacity. Plaintiff contends the ALJ "glossed over" plaintiff's depression and two suicide attempts in assessing plaintiff's limitations from a mental standpoint. (Doc. 9 at 11). Plaintiff asserts the ALJ failed to consider plaintiff's difficulties in dealing with stress and other people. (Doc. 9 at 11, citing Dr. Sexton's consultative examination showing plaintiff was mildly impaired in interacting with people and tolerating work stress) (Tr. 362). Plaintiff also argues the ALJ failed to consider the moderate limitations on his ability to complete a normal workday and workweek and to respond to changes in the workplace imposed by the state agency psychologists. (Doc. 9 at 11, citing Tr. 408). Plaintiff also contends the ALJ failed to properly consider plaintiff's post-traumatic headaches (Tr. 269) and leg and back pain. (Tr. 323).

While it is clear the ALJ must consider the combined effect of plaintiff's impairments in assessing his eligibility for disability benefits, *see Barney v. Secretary of Health & Human Services*, 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing the ALJ did so in this case. *See Loy v. Secretary of Health and Human Servs.,* 901 F.2d 1306, 1310 (6th Cir.1990) (per curiam); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (per curiam), *cert. denied*, 484 U.S. 1075 (1988). In addition to plaintiff's seizure disorder, the ALJ determined that plaintiff's degenerative disc disease of the lumbar spine, generalized pain in his legs, feet, and wrists, chronic recurring headaches, and

20

mood disorder are all severe impairments. (Tr. 11). The ALJ analyzed each of plaintiff's multiple impairments after carefully considering the entire record. (Tr. 14-18). The ALJ's finding that plaintiff's combination of impairments (plural) did not meet or equal the Listings (Tr. 12-13) is sufficient to show the ALJ considered the combined effect of plaintiff's impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592.

In addition, and contrary to plaintiff's argument, the ALJ properly evaluated what plaintiff characterizes as his "two episodes of decompensation." (Doc. 9 at 11). The ALJ specifically noted that plaintiff attempted suicide from an overdose of medication in June 2007 and February 2008, but determined that these hospitalizations did not support a finding of repeated episodes of decompensation of extended duration for purposes of analyzing plaintiff's functional limitations under the Listings. (Tr. 12-13). Episodes of decompensation "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). "The term repeated episodes of decompensation, each of extended duration . . . means *three episodes* within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* (emphasis added). Plaintiff's two hospitalizations simply do not constitute repeated episodes of decompensation of extended duration. *See Rabbers v. Commissioner*, 582 F.3d 647, 659-60 (6th Cir. 2009). Nor does plaintiff suggest what additional limitations the ALJ should have imposed given his two hospitalizations.

The ALJ also considered and in fact accepted Dr. Sexton's opinion that plaintiff was mildly limited in his social functioning, as well as the state agency consultants' opinions that

21

plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule; complete a normal workday/work week without interruption; and respond to changes in the workplace setting. (Tr. 18, Tr. 358-364). The ALJ further noted that despite these limitations, the state agency consultants opined that plaintiff was capable of understanding, remembering, and following 3 to 4 step instructions; persist at tasks to complete them; interact with others; and adapt to daily work stress. (Tr. 18, citing Tr. 407-410, 411-424, 478). Plaintiff fails to provide evidence or argument explaining how such limitations would further diminish his functional capacity. While plaintiff also argues his headaches, leg pain, and back pain would "certainly impact" his ability to work, he fails to explain how or to provide any authority for this argument.

The ALJ's decision reflects he considered all of plaintiff's impairments in combination in formulating plaintiff's RFC. The RFC took into account both the exertional and non-exertional limitations caused by plaintiff's various severe impairments, and the hypothetical posed to the VE, upon whose testimony the ALJ relied, included all the various limitations found to result from the combination of such impairments. Accordingly, the ALJ did not err in considering the combination of plaintiff's impairments.

**III. The ALJ properly considered plaintiff's allegations of pain and disability in making his credibility finding.**

Finally, plaintiff argues the ALJ erred by not adequately considering plaintiff's pain and credibility. Plaintiff cites to various medical records which document plaintiff's complaints of pain to his doctors. (Doc. 9 at 12, citing Tr. 38-39, 40, 323, 470, 474). Plaintiff also cites to MRI

22

findings from August 2008 showing mild disc protrusions at L3-4 and L4-5, and mild disc displacement at L5-S1. (Doc. 9 at 13, citing Tr. 562).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the ALJ must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).

The issue here is not whether plaintiff experiences pain. Rather, the relevant issue is whether the evidence of record shows objective medical evidence confirming the severity of the pain plaintiff alleges or that plaintiff's objectively established medical conditions can reasonably be expected to produce his allegedly disabling pain. *Duncan,* 801 F.2d at 853.

Here, the ALJ accepted that plaintiff has a severe back impairment from degenerative disc disease of the lumbar spine, as well as severe generalized pain in his legs, feet, and wrists, and chronic recurring headaches. However, the ALJ reasonably determined that plaintiff's complaints of daily, debilitating pain from those impairments are not supported by the clinical and objective findings of record. (Tr. 19). While plaintiff points to Dr. Merkel's notation that plaintiff had chronic lower extremity pain (Doc. 9 at 12, citing Tr. 474), Dr. Merkel also opined that with respect to plaintiff's functional capacity plaintiff had "no obvious impairments."  Dr.

23

Merkel further opined, "I don't feel he is disabled." (Tr. 461-62). The ALJ noted the lack of certain observable manifestations of severe pain, such as weight loss due to a loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscle spasms, the use of assistive devices, prolonged bed rest, or adverse neurologic signs. (Tr. 19). Plaintiff does not allege, nor does the record support, a finding that his pain was not adequately managed by medication when so prescribed or that he suffered any adverse side effects from such medication. In fact, plaintiff testified that the only medication he takes for pain is over-the-counter ibuprofen. (Tr. 40). Nor have plaintiff's physicians suggested any more aggressive treatment than medication. The ALJ further noted that plaintiff's activities of daily living were inconsistent with plaintiff's allegations of debilitating pain, finding that plaintiff is capable of most household chores with an occasional break and yard work. (Tr. 19).

Plaintiff's subjective allegations of pain are unsupported by the record and do not support his claim of disability in this case. *Duncan*, 801 F.2d at 852-53; 20 C.F.R. § 404.1529. The ALJ's credibility determination is entitled to a high degree of deference by this Court and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In this case, the ALJ's credibility finding is supported by substantial evidence and should not be disturbed by this Court.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 1/24/2011

Karen L. Litkovitz
United States Magistrate Judge

24

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFF R. ASH,                                  Case No. 1:10-cv-020
    Plaintiff                             Barrett, J.
                                                   Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).